for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you. Good morning. You may be seated. And I see you. Thank you, Your Honors, and may it please the Court. Eric Suarez for the petitioner, Mr. Marvin Amaya. Under the precedent established by this Court, a motion to reconsider a decision by the Board of Immigration Appeals can be reversed using the abuse of discretion standard if the agency acted arbitrarily, irrationally, or contrary to law. We ask that the Court vacate and reverse the BIA's denial of Mr. Amaya's motion to reconsider this as it is in direct tension with this Court's President as it relates to persecution, nexus, and relief pursuant to the Convention against Torture. Mr. Suarez, can I ask you just about the procedural posture? Do you agree the only thing before us on this petition for review is the denial of the motion to reconsider? Yes, Your Honor, but in order for us to get to the denial of the motion to reconsider, we must look at why they denied it. No, I completely understand, and when I read why the BIA denied it, they seem to deny it not on the grounds that it was untimely, not on the ground. They seem to deny it on the grounds that it was wrong, substantively. That's how I read them to deny it. But just as a person who used to teach so pro, I think procedurally speaking, do you agree that the only thing that we can actually vacate in this procedural posture is the denial of the motion for reconsideration? Yes, Your Honor. So we would send it back to the BIA either to grant the motion to reconsider or, I guess, at least provide some other explanation for denying the motion to reconsider procedurally? Yes, Your Honor, or provide a reasonable explanation on the basis of the precedent established by this court. Sure. No, of course. As it relates to those issues. Obviously, we feel that the BIA did not do that. The BIA, as it relates to precedent regarding persecution, did not adhere to it. As it relates to precedent regarding nexus, did not. No, absolutely. I agree with all of that. Just to make it clear, in this procedural posture, though, we can't actually direct the BIA to grant relief, right? Because all we're actually reviewing is the denial of motion to reconsider. I would agree with that, Your Honor. Okay. As to precedent, as we had just mentioned, right, this court has held that a threat of death alone amounts to persecution. This court has also held that extortion alone can amount to persecution. As it relates to nexus, the guidance that this court has given the adjudicators at the agency to consider is whether or not the protected ground is at least one central reason for the reason why this person was targeted. It does not have to be the central reason. It does not even have to be the dominant central reason. And now the IJ and the BIA considered it merely an incidental nexus to the MS-13 targeting your client. What's your best argument that it's more than just incidental? Yes, Your Honor, I believe the facts lead that on all by themselves, right? The facts in this case indicate that the respondent from 2001 to 2005 was targeted by the MS-13 gang for recruitment. This is at page 109 of the record. He indicates that he was targeted about five times and threatened with death. He says, quote, that they're going to cut my tongue out and they'd kill me. Page 110 and 111, he indicates that the gang knew. Didn't they say they would decapitate him? That they would cut his tongue out and kill him. Yeah, okay. They also said, Your Honor, page 110 and 111, that they knew that his family was here in the United States. He says, they wanted my brothers, the brothers of mine, they wanted them to finance their crimes. Page 120, he says, quote, they said I had siblings in the U.S. and if I joined them, the gang, they would finance their activities, the siblings. This is time and time again pointed to by evidence in the record, substantial evidence in the record, that demonstrates that this is the reason why he was initially targeted. But it doesn't stop there. His brother, Victor, was murdered by the gangs because he also refused to join, because he also refused to have an avenue in which the family that was here in the United States could continue to provide for the gangs. Victor moved to a different place in the country. Victor was still found by the gangs and the gangs still murdered him. And not only that, Your Honor, when they, the gang in January of 2005, they stopped him, they beat him, they told him again that he had to join, they cut him with a knife, he refused. His siblings subsequently fled the United States and his other brother, Moises, was also, who remained in El Salvador, was also targeted for recruitment, he was targeted, refused to join, they wanted him to be a sort of mule to carry drugs for them and transport drugs for them, and he also refused, and he was also targeted by the gangs. So we believe that the facts themselves bear out. Can I ask you to talk about the theory that it's a state, the thing that I think, in my sense, the BIA didn't really address at all, is the theory that he would be killed as a stand-in for his brother, the one, so that one of the arguments I understand him to have made is the gang would like to get at his brother, his brother's in the United States, the gang can't get at his brother, and so if he is back in El Salvador, the gang will target him as a stand-in for his brother. Could you talk about that for a moment? Yes, your honor, this is as it relates to specifically the 2014 threats that his brother, Moises, referred to. Now, we feel that the BIA, nor the IJ, considered any of this evidence when they made their determination, but in the theory there, the reason for the nexus there is the reason, if you go to that hypothetical that says the gang would really like his brother, they is on the grounds of his family status, because the reason he would be targeted is because of his, of who his brother is. If his brother was somebody else, he would not be targeted, is that correct? That is correct, your honor, and we believe also that the evidence bears that out as well. On page 104, he testifies to the fact that he is completely certain, Mr. Amaya and I quote here, I am completely sure, because I am his brother, and if they don't find him, they will take action, they will act. He says on page 107, quote, they know that I am his brother, and if I were to go back, they would act because they want people to respect the laws of the gang, implying that because his brother fled, his brother refused, they would target him and his family. Not only that, on page 124, he says a quote, if they don't find the person that they're looking for, my brother, they will find me instead. They would kill me. And he says as well, page 106, that his home, the family home, where he would have to go back to, has now been a target of the gang. It's been, quote, marked by the gang, which means that they're not only looking for his brother, but they're looking for anybody who could go back to this home, anybody who's a member of this family who goes back will be targeted and threatened and persecuted. So we believe, Your Honor, that the facts bear this out, that this is something that the Board failed to consider, that the IJ failed to consider as it relates to both persecution and as it relates to Nexus. This, the President of this Court is clear, and the Board failed to consider that. We brought that up to the Board in the motion to reconsider, and the motion to reconsider in this case articulated the reasons why the Board should have, should have made the determination that it did, and it refused to consider them again when it came to, to its decision denying the motion to reconsider, which is why we are before this Court today. This Court in many occasions has said that time and time again they have rejected arguments where the Board has excessively narrowed the determination as it relates to Nexus. And we ask this morning for the Court to do so again, because the Board here has failed to meet its standard, has failed to meet the determination. Do you want to make any argument about the country conditions in your Convention Against Torture piece of this? Yes, as it relates to the Convention Against Torture, Your Honor, the Board and the IJ failed to conduct the proper analysis here that this Court has, has indicated for them to do. In the Rodriguez-Arias analysis, the Board and the IJ should have weighted the evidence and considered all, all aspects of persecution in this case. It did not do that. The, the IJ focused instead on the fact that he was, I believe the IJ used, brief indulgence, the word that the IJ used was nagged by the gang for a couple of years. The IJ. I guess my question was going to the, the country conditions argument. In your brief you said that they, below they failed to address all of the country conditions. What, what, what's an example in the record of country conditions evidence that the lower courts failed to consider? Yes, Your Honor, the Court basically, the only thing that the lower courts considered in this particular case was a citation to the fact that the record demonstrated that there were some instances relating to actions by the police of some activity to address the gang. That's not what the attorney initially, we did not do this case, but who, the attorney that submitted this case initially submitted country condition evidence indicating that the gangs were countrywide, that the gangs in this particular case would target Mr. Amaya anywhere because of their reach, that the police in this case would be unable to act. And that's not only bared out by the country conditions, Your Honor, by his own statements and testimony. He indicated that the police are corrupt. Did he report it to the police? He did not report it to the police, Your Honor, because in this case the police who picked up the body of his, of his dead brother did not investigate the death of his dead brother. And so he felt like, and he articulated in testimony, that it would be futile essentially for him to report this issue to the police because the police did not act, did not act in his brother's case, did not act in other cases in the country. And for that reason, he felt that this issue to the police of doing so would not cause a result, would not cause action, would cause him more harm. And that's exactly what would have happened in, in this particular case. And as it relates to the consideration of the evidence in this, in this case, the IJ, it will note for, from the record, the IJ did not receive the actual evidence in this case until the hearing had already begun. How could the IJ have considered properly the evidence that was submitted, the articles that were prepared, the affidavit that was submitted in this case, if he received the evidence mid-trial? That would not fly in this courtroom. That would not fly between counsel and I. A law student would not do that if they were preparing for an exam. Why would we allow an immigration judge to do this and to conduct an analysis this way in a hearing that is so meaningful, where he is holding the case in his hands? That would not be acceptable at this point. Your Honor, I'll close on, with this court's own words relating to what we, what we expect or should expect from the adjudicators in this particular case, or in cases of this, of this nature. In the Rodriguez-Arias decision, this court indicated that when a man's life is on the line, we should, they should know that the arbiters in their case reviewed the record thoroughly, reviewed the record fully, and made the best decision that they could based on the law. That did not happen in this case. And for those reasons, we request that this be vacated and remanded for the board for consideration under this court's precedent. All right. Thank you. You have some time in rebuttal. Mr. Coleman. Thank you, Your Honors. May it please the court. My name is Robert Coleman, and I represent the Attorney General. Turning first to the cap claim that was addressed most recently on the opening argument, there was no claim made below that there was insufficient time for the immigration judge to review the evidence, and no ineffective assistance of counsel type argument that was made below. So that type of argument would be unexhausted. But nevertheless, the immigration judge and the agency determined, demonstrated that they did consider, they reviewed and considered the country conditions evidence by acknowledging that there are extreme difficulties in El Salvador regarding crime and organized crime and corruption, but that there is evidence in the country conditions reports that indicates that the immigration judge did not have sufficient time and resources and some inroads to remedy that situation. And that is all that petitioner is entitled to. The pure fact that the petitioner sees the evidence differently is not enough to disturb the decision below. And again, as was addressed during opening argument, the only issue, the only issue is whether the board adequately affirmed in the first instance that decision was not appealed to this court. Right, but abusive discretion includes an erroneous application of the law, does it not? That is correct, Your Honor. And we've been pretty clear in our cases that in order to establish the connection here, the nexus, that the It doesn't have to be the sole reason, and I'm sure you're very familiar with that line of case law. And how could the family relationship not be one central reason under the facts of this case? This appears to me to be one of the stronger cases that I've seen recently in terms of family relationship as a particular social group. Well, it isn't. The evidence is not indicative that this was actually one central reason, the family relationship, because we have, if you turn it to page 120, where the petitioner gave the notification or notified the court that the gang at one point mentioned his family, he said that if I were to join the gang, then they would expect my family to finance their activity. Right, but he also said they personally threatened him. But not for that reason. Excuse me? Pardon me, Your Honor. Not for that reason. Right, but that was the beginning. That was the beginning of his relationship with trying to repel the gang. And then they murdered his brother, and then his other brother fled. And then he said, and the IJ did not make a credibility determination, so there's a rebuttable presumption of credibility. And then the petitioner said, well, if I'm sent back, they're going to get me because they couldn't get Moses. Well, with a presumption of credibility, why doesn't that carry the day for him that there was an erroneous application of law in this case? And I would add to that line of facts that they also marked the family, the gang also marked the family home. Yes, and to deal with that issue first. Well, deal with, I would deal with Judge Keenan's issue first. I understand. Will do. Thank you. The testimony indicates that although Amaya was targeted, threatened, and harmed, it was because of his resistance to gang membership. And this, that is not a nexus. But it seems to me that what you're trying to do is isolate each piece of evidence rather than continue, consider the whole factual context of what we have here. Sure, if you just take one thread of what happened, you can say, no, there might not have been a tie. And then you take another and you can isolate individual facts and say, standing alone, they wouldn't create an aggregate situation. But if you have, if you look at the entire factual context, how can you say that he didn't fear future persecution based on his family relationship? Because the mere mention of a family relationship is not enough to demonstrate that the family relationship is one central reason. And this court has case law. But he's got the presumption of credibility here, does he not? Under the case law? Assuming that he is credible, yes. Assuming that he is credible. Well, he is credible for our purposes of review. He is credible. Yes, but he didn't say he was threatened. He doesn't even claim that he was threatened because of his family relationship. He says that he was targeted, threatened, and harmed because he resisted gang recruitment. He now mentions that the gang did mention his family relationship. But just that mention is not enough. Under Cortez-Mendez, this court affirmed a similar circumstance. There, the facts were even stronger, actually, where a family membership was mentioned in the context of a threat issued to the petitioner. But the court found that was not one central reason because there, as here, there was testimony from the petitioner himself saying, the reason why I was targeted and threatened was because of gang recruitment efforts. And that goes along with the finding that the agency made here, that this was merely an incidental or tangential relationship to the actual central reason, which was because of gang recruitment. Can I give you a hypo? And I want to be clear, I recognize the obvious similarity of the facts of this case, but I want to be clear this is a hypo, so please don't fight the hypo and the truthfulness of the hypo. So what if a group, a criminal group, targets my mother for something? And let's posit that they are not targeting her on a particular social group. They're targeting her for reasons completely unique to her, right? But for whatever reason, my mother is very good at evading them, and so she is not someone they can get at. And so we know, and again, don't, that we know for certain that the gang inability, their inability to get at my mother, they're going to kill me as a proxy for my mother, right? They're going to do that if they're not able to get at my mother. In fact, maybe they call my mother from her safe space somewhere far away and say, if you don't come back and surrender yourself to us, we are going to kill your son. Is there any question that in that situation, the threat against the son is based on an identifiable social group? There is a question, because we would need to know what the social group is. The family, I'm going to kill you because they only, let's posit further that we know for sure that if this person was not her son, they would not be targeting them. They're going to kill him as a proxy for her because he is her son. If that's true, is there any question that that's based on an identifiable social group? I don't believe there is any question in that case. And then why doesn't that just resolve this here? Because here this gentleman testifies, and there's no finding of lack of credibility, he testifies, they want to get my brother. If they can't get my brother, they will kill me because I'm his brother. How is that any different than my... Now again, maybe he's not credible, maybe he's not believable, maybe that's not true, maybe an IJ could... But here we don't have an adverse credibility finding. So why isn't that just this case? We don't have an adverse credibility finding here, but we do, what we're limited to is his unsupported assertion in his testimony. And as this court indicated in Cortez-Mendez, just an unsupported assertion that the family relationship will be the reason why he'll be persecuted isn't enough. Particularly in the context of, as we have here, testimony coming from the petitioner himself saying the reason why I was targeted, threatened, and harmed was because I resisted... But that strikes me as the fundamental mistake the BIA made, which is that they didn't differentiate past persecution from a risk of future persecution. I agree that a lot of the evidence in this record is consistent with the notion that to the extent this individual suffered past persecution, it wasn't based on identifiable social group. But under asylum and withholding, past persecution is just evidence of the which is future persecution. And I don't see the BIA grappling at all with his testimony that says, I fear something bad will happen to me in the future because of my relationship with my brother. And I believe that's because that's just unsubstantiated. But they don't even say that. They literally don't even mention this possibility. And the statute addresses well-founded fear of persecution. The statute doesn't have to say evidence of persecution or evidence that I will be persecuted. It's a well-founded fear. Correct. But the issue is then, is it well-founded when you have no evidence and you're left merely with supposition? Right. But the government didn't target his credibility. There's a rebuttable presumption under our case law. I mean, you could have gone after his credibility at the hearing. Yes, but there's still a question as to whether the evidence is sufficient, regardless of credibility. Just because the individual is found credible doesn't mean that they automatically have met their burden of proof. Well, what would the evidence be? What else is it you would want him to do other than say, this has happened several times. This is why I'm afraid. He could have provided his brother as a witness. Which, well, one's dead and the other is, you know, fled El Salvador. Right, he's now in the United States and he was listed as a witness who was supposed to attend the hearing. But then he didn't attend and he didn't provide a declaration either in support of his brother's petition. Furthermore, the evidence regarding the brothers is cloudy at best. Which brother are we talking about here now? The dead one or the one that had to flee? Both. Okay. As far as Victor is concerned, that's the older brother who was killed in El Salvador. The evidence is unclear whether it's even his brother or not. On page 153, there's a birth certificate for Victor, lists different parents than the parents listed in the 589 for Amaya himself. So to the extent there was any family relationship as far as why Victor was killed, we don't know what the relevance of that is in particular. And further, that was before Amaya here had his interaction with the gang. So if Victor's interaction with the gang was going to influence how Amaya was treated, that would have already happened. Moreover, as far as Moises is concerned, and I should state too, we don't have any evidence in the record that any gang members know that these three individuals are related. There's no evidence of that whatsoever. Further, as far as Moises is concerned, Amaya testified directly about his understanding of what happened to Moises. He was asked about his relationship to Moises. He said, I was very close to my younger brother Moises. He told me what happened to him. And during his testimony, he says the reason why he was targeted was because he failed to comply with the request of the gang to serve as a drug mule. He was then asked, was there any other reason? And he said, no, that's the reason. It was because he failed to comply with the gang's request, which is completely in keeping with why Amaya was harmed, threatened, and targeted originally. It's because he was originally of gang recruitment age, which he no longer is presumably, but even putting that to the side. And it was also because of his family membership. Because you pointed to JA120, and there he said that the gang told him they knew I had siblings in the United States, and that if I joined them, they would have to finance their activities. So he was targeted initially because of his family relationship. That's not what he said. He said, if I join, he doesn't say I was targeted because of my relationship. Whereas he does say I was targeted. I don't know what that sentence would say other than that was their intent. Well, he just doesn't. So he has to say the magic words, I was targeted because of my family relationship. Because the question he was asked is, did they ask you for anything other than joining them? And he says, they said they knew I had siblings in the United States, and if I joined them, they would have to finance their activities. So the gang is connecting them, the gang recruiting him to his family in the United States. But that puts this case very close with Cortez Mendez, where there was also a similar mention of the family relationship. But there is no claim that the threat was contingent on the family relationship. So just that mere mention of the family relationship, I agree. It's a little strange that that's just in there, that they would mention that. But that's the evidence that we have here. And so the evidence is, it's contingent in that it says, if I joined, then they would support the gang financially. But more than that, just the mere mention isn't enough. And here, the agency acknowledged that this happened. It just found that this was purely incidental or tangential to the real reason why he was targeted. Because of his, originally because of his gang recruitment age, he was roughly 16 at the time when he was originally approached. That's 97 and 98 on the record. And then as he testified, he was threatened. Particularly when he was beat up on the one occasion that he was physically harmed in 2005. He testifies that that's because two individual gang members approached him, said, you need to join. He said, no. They beat him up. There was no mention at all of the family relationship there. There's no evidence that those individuals even knew of the family relationship, him having family in the U.S. And again, there's no evidence at all that any of the gang members knew that these three individuals were related, much less that they would still know that all of these years later, as we're talking about Moises's interaction with the gang was almost 10 years ago now, and Amaya and Victor's interactions around 20 years ago. If the court has any further questions, I'd be happy to answer those. All right. Thank you. Thank you very much. Go ahead, Your Honor. Your Honor, I'll make two brief points. First, as it relates to the opposing counsel's claims that the record is unsubstantiated, the regulations tell us clearly that evidence of testimony that is found to be credible is enough to establish that the facts of the case bear out that the incidents actually happen. They don't have to have a document that demonstrates that the applicant's own testimony alone is enough to establish that. As it relates to Cortez Mendez, Your Honor, this case could not be more far apart from Cortez Mendez. In Cortez Mendez, there were other family members that were unharmed in this particular case. In Cortez Mendez, the applicant in that case specifically testified that his rejection of gang membership was the impetus for his harassment. That did not happen here. The record here clearly bears out that he testified from the get-go that the reason why he was targeted is because he had siblings in the United States, as it relates to the initial threat, and the reason why he will be targeted if he returns, as it relates to future persecution, is because of his brother, Moises, who was targeted by the gangs. That is the basis for this claim. This could not be farther apart from the Cortez Mendez case that the Department cites. Cortez Mendez, as I mentioned, did not have any of these specific incidents, and he himself testified to the fact that he was targeted for another reason. But here, we have met the standard that this Court has laid out time and time and time again. The basis for why Mr. Amaya was targeted and why he will be targeted in the future is because of his relationship to his family, and that is at least one central reason why. Thank you. Now, Mr. Coleman argued that there's no evidence that the gang knew that he was related to, I guess, Victor. What's your response to that? He bears that out in the record, right? He says in the record why Victor was targeted, too. He was related to Victor by claiming that he was his brother. That is admitted part of the undisputed facts of the case. The Department may bring out the fact that there were different parents listed on test. This was not an issue on the record. We don't have an issue of disputing his relationship to Victor. The gangs targeted Victor for the exact same reason why they targeted him, because both of them had siblings in the United States who could finance a gang's activity. That is the reason why they were targeted and not somebody else. That is the reason why Mr. Amaya was targeted and not somebody else, his relationship to his siblings who were in the United States. Thank you. Thank you. All right, we'll come down in Greek Council and go to our next case.
judges: Stephanie D. Thacker, Toby J. Heytens, Barbara Milano Keenan